UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SANDRA F. KENNEY, )
 )
    *Plaintiff* )
 )
v. ) No. 2:13-cv-296-GZS
 )
CAROLYN W. COLVIN, )
*Acting Commissioner of Social Security,* )
 )
    *Defendant* )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing past relevant work or, in the alternative, work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in (i) finding that she had a medium duty work capacity, (ii) not identifying the transferable skills that would permit her to perform other jobs in the national economy, (iii) failing to give controlling weight to the opinion of treating source George K. Gardner, Jr., D.O., (iv) making an improper credibility determination, and (v) failing to find her disabled pursuant to the so-called "Grid," Appendix 2 to 20 C.F.R. Part 404, Subpart P. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 14) at 7-14. For the reasons that follow, I recommend that the court affirm the decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 13, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 13, 2013, Finding 1, Record at 22; that she had a severe impairment of lumbar disc disease with chronic pain, Finding 2, *id*.; that she retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except for work that required the ability to sit, stand, or walk more than about six hours in an eight-hour workday, climb ladders, scaffolds, or ropes, or be exposed to hazards, Finding 5, *id*. at 28; that she was capable of performing past relevant work as a machine operator, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 33; that, in the alternative, considering her age (53 years old, defined as an individual closely approaching advanced age, on her alleged disability onset date, April 16, 2010, and subsequently turning 55, defined as an individual of advanced age), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id*. at 33; and that she, therefore, was not disabled from April 16, 2010, through the date of the decision, June 7, 2012, Finding 7, *id*. at 34. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

Alternatively, the administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Finding of Medium Work Capacity

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). As the plaintiff points out, *see* Statement of Errors at 3-7, no medical expert expressed the opinion that she was capable of lifting or carrying that much weight. Two agency nonexamining consultants, J. Pataki, M.D., and Richard T. Chamberlin, M.D., found her capable of lifting 20 pounds occasionally and 10 pounds frequently, *see* Record at 72, 92, which is consistent with the demands

3

of light work, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b). In addition, Dr. Gardner stated that she could not lift and carry up to 10 pounds for up to one-third of a typical workday or workweek and, on that basis, as well as her asserted inability to tolerate the prolonged standing and sitting needed for either light or sedentary work, was capable of less than sedentary work. *See* Record at 432; *see also, e.g.*, 20 C.F.R. §§ 404.1567(a), 416.967(a). As the plaintiff further notes, *see* Statement of Errors at 10, an agency examining consultant, Ian F. M. Buchan, PA-C, stated that she "may have difficulty lifting and carrying because of her complaints of chronic low back pain[,]" Record at 325.

While an administrative law judge "is not qualified to assess residual functional capacity based on a bare medical record[,]" she is not precluded from "rendering commonsense judgments about functional capacity based on medical findings[.]" *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). In addition, an administrative law judge may take into account a claimant's own statements regarding her functional capacities. *See, e.g., Dandreo v. Astrue*, Civil No. 09-347-P-H, 2010 WL 2076090, at *5-*6 (D. Me. May 20, 2010) (rec. dec., *aff'd* June 9, 2010). In her brief and through counsel at oral argument, the commissioner persuasively contended that the administrative law judge made a commonsense judgment in this case, relying in part on medical findings of record, in part on agency consultants' findings, and in part on the plaintiff's own admissions. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 3-6.

The administrative law judge articulated several bases for finding the plaintiff's allegations of disabling pain and functional limitation less than credible, including that:

1. Her work history was "spotty at best[,]" indicating a poor work ethic. Record at 30.

4

2. She "routinely lied about her education to obtain jobs[,]" which weighed against her credibility. *Id*.

3. She "twice asserted that she stopped work on the alleged onset date because of difficulties with her supervisor and not because she was unable to do the work[,] which was very heavy labor[,]" and "asserted that she did the work very well." *Id*. (citations omitted). While she later testified that she could not do the job well, the administrative law judge chose to give her earlier statements greater weight. *See id*.

4. The record contained "reports of activities beyond what would be expected based on the [plaintiff's] allegations of severe pain and functional limitations." *Id*. "For example[], she stated that she cut and stacked wood if she was in the mood, continued to ride a motorcycle, and played with her dog while kneeling for extended periods." *Id*. (citations omitted).

5. "Dr. Gardner's notes generally report no observations of signs of ongoing back or leg impairment other than tenderness, spasm, and positive straight leg raise on the right" and "never report observations of any other signs that the [plaintiff] was in any pain such as difficulty with gait, movement, maintaining a static position, or manipulation [of] objects with her hands." *Id*. at 31. "Although he noted difficulty with straight leg raising on the right, an MRI indicated that the [plaintiff's] possible nerve root problem would be on the left and that her right sided condition had improved." *Id*.

6. "Mr. Buchan opined that the [plaintiff] 'may' have some difficulty with lifting and carrying due to degenerative disc disease in the lumbar spine but found no evidence of such difficulty or any other difficulty in moving about or manipulating objects." *Id*. at 32 (citation omitted).

The administrative law judge gave little weight to the RFC opinions of Drs. Pataki and Chamberlin that the plaintiff was limited to light work, noting that neither addressed her alleged ability to do very heavy work prior to her alleged onset date of disability, inconsistencies in her allegations, or a lack of objective and subjective findings by examining medical practitioners. *See id*. However, she adopted their opinions in other respects concerning limitations secondary to the back disorder "to give the [plaintiff] the benefit of any doubt." *Id*.

She gave the Gardner RFC opinion no weight, deeming it "entirely inconsistent with his treatment notes and other medical reports of record by other examining and nonexamining medical practitioners." *Id*. She pointed out that, during an annual physical on August 9, 2011, the plaintiff was feeling well and added that she had only minor complaints such as back pain. *See id*. She surmised that the severe limitations assessed by Dr. Gardner were based on the plaintiff's subjective allegations, which she found less than credible for the reasons she had previously articulated. *See id*. at 32-33.

She concluded:

In sum, the above [RFC] assessment is supported by the activities the [plaintiff] is able to perform, the many inconsistencies in her allegations, her ability to do very heavy work on the alleged onset date without any indication in the record of a worsening in her condition that date, the absence of any observations of objective or other signs of impairment by examining practitioners, the absence of any referral to specialists, and the absence of any significant change in treatment since 2008.

*Id*. at 33.

This conclusion is supported by substantial evidence.

In a function report dated August 4, 2010, in response to the question, "Have you ever been fired or laid off from a job because of problems getting along with other people[,]" the plaintiff checked the boxes for both "Yes" and "No" and wrote: "Not sure – didn't think so but my last supervisor said I complained too much. I believe he was just lazy + didn't want to take

responsibility." *Id*. at 218. She elaborated: "When I mentioned that my last supervis[o]r . . . was an ass[,] he was. I did my job well. It was extremely heavy duty work – regrin[d]ing at Corning." *Id*. at 219.

The plaintiff contends that she never said that she was laid off from her last job due to conflicts with her supervisors. *See* Statement of Errors at 7. However, she did check the box for "Yes" as well as that for "No," and her statements as a whole reasonably can be read as indicating that she was able to perform the heavy-duty work well. *See* Record at 218-19. Moreover, as the administrative law judge noted, *see id*. at 30, the plaintiff indicated in a subsequent function report, dated April 10, 2011, that she was fired or laid off because of problems getting along with people, checking only the box for "Yes," *see id*. at 244. This time, her written explanation was also unequivocal. She stated: "My last supervisor said I complained too much but he was full of ----. He was just too lazy to do his rounds and make sure 3rd shift left things in order. I hope he's dead[.]" *Id*. at 244.

While the plaintiff, at hearing, testified that she had a number of physical difficulties performing her final job, *see id*. at 47-53, the administrative law judge reasonably viewed that testimony as conflicting with the statements made in the two earlier function reports. It was within her purview to resolve that conflict. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The [commissioner] may (and, under [her] regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts.").

The administrative law judge further noted that "Dr. Gardner's notes generally report no observations of signs of ongoing back or leg impairment other than tenderness, spasm, and positive straight leg raise on the right." Record at 31. While, at oral argument, the plaintiff's counsel

7

contended that Dr. Gardner's objective findings were consistent with, and supported, his RFC opinion, he agreed that those findings did not reveal any *worsening* in his client's condition after her alleged onset date of disability.[2]

The administrative law judge made a commonsense judgment that the plaintiff was capable of performing at least medium work based on the plaintiff's own statement that she could perform heavy work well, as of the time her final job ended, as well as the absence of any indication from Dr. Gardner's objective findings on examination that her condition worsened after that time.

This commonsense judgment, in turn, was bolstered by other evidence, including Buchan's relatively benign findings on examination and evidence of the performance of activities inconsistent with the plaintiff's allegations of disabling pain and functional limitation.

Buchan found no objective evidence of functional limitation apart from "significant difficulty raising both legs up off the exam table because of complaints of low back pain." *Id*. at 324. He noted that the plaintiff ambulated without any difficulty, had a normal gait, was able to heel walk and toe walk, was able to do a deep knee squat and rise, and had no difficulty sitting, standing, or walking. *See id.* at 325. He stated, "She may have difficulty lifting and carrying because of her complaints of chronic low back pain" but "had normal function of her spine at the

---

[2] The plaintiff relied on (i) Dr. Gardner's findings on examination that the plaintiff had tender back with spasm on palpation and positive straight leg raise on the right, (ii) bone density testing of her vertebral spine showing that her bone mass in her back was 25 percent below normal, and (iii) MRI imaging of her lumbar spine revealing progression of disc degeneration along her left L3-L4 lateral disc margin that did not cause true root compression but could cause secondary effects on the left L3 root as it passed through the foramen. *See* Statement of Errors at 9-10. As counsel for the commissioner observed, the phrase "tender and spasm lumbar spine SLR [straight leg raise test] positive right" appears in each of the records cited by the plaintiff, as well as in reports generated before her alleged onset date of disability. *See* Opposition at 8 (citing Record at 361, 363, 367). The commissioner also correctly noted that the MRI image upon which the plaintiff relies dates from March 2009, well before the April 2010 alleged disability onset date and during the period of time the plaintiff reported doing heavy or very heavy work. *See id.* (citing Record at 364-65). While the bone density testing dates from December 2010, subsequent to the plaintiff's alleged onset date of disability, the commissioner correctly observed that (i) the plaintiff did not challenge the administrative law judge's finding that no treating or examining source attributed any functional limitations to her osteoporosis, and (ii) Dr. Chamberlin had the benefit of review of that testing, but deemed the condition nonsevere. *See id.* at 8-9 (citing Record at 23, 90, 333)

time of this exam." *Id.* The administrative law judge reasonably found that "Mr. Buchan opined that the [plaintiff] 'may' have difficulty with lifting and carrying due to degenerative disc disease in the lumbar spine but found no evidence of such difficulty[.]" *Id*. at 32 (citation omitted).

As the administrative law judge noted, evidence that the plaintiff cut and stacked wood, continued to ride a motorcycle, and played with her dog while kneeling for extended periods further undercut her allegations of disabling pain and limitations. *See id*. at 30.

The plaintiff protests that she stated in a function report that she used to ride motorcycles but could not do so anymore, and that there is no support anywhere in the record for Buchan's allegation that she told him she continued to ride motorcycles. *See* Statement of Errors at 8 (citing Record at 239, 322). Nonetheless, as counsel for the commissioner contended at oral argument, this was yet another conflict in the evidence that it was within the purview of the administrative law judge to resolve. *See, e.g., Rodriguez,* 647 F.2d at 222.

The plaintiff argues that, while she stated that she did not mind cutting or stacking wood, there is no evidence regarding how much weight she lifted, how long the work took her, how often she did it, or for how long she could do it. *See* Statement of Errors at 8 (citing Record at 241). As counsel for the commissioner rejoined at oral argument, however, regardless of these details, the fact remains that the plaintiff indicated that she cut and stacked wood, in itself a strenuous activity. *See* Record at 241 ("I don't mind doing wood cutting or stacking . . . . I like that if I'm in the mood.").

Finally, the plaintiff contends that the incident in which she was playing with her dogs while kneeling actually injured her knees, as demonstrated by an MRI of her left knee showing a region of bone infarct at the proximal tibia. *See* Statement of Errors at 8 (citing Record at 372). However, as the commissioner observes, *see* Opposition at 12, while the plaintiff suffered

9

prepatellar bursitis in both knees secondary to prolonged activity on her knees, described as having resolved as of the time of her visit to orthopedic surgeon John J. Padavano, D.O., the abnormal MRI demonstrating a bone infarct was "an incidental finding" that was "not clinically significant[,]" Record at 372.

For all of these reasons, the administrative law judge made a supportable commonsense judgment that the evidence of record, in its totality, supported a finding that the plaintiff retained at least the capacity for medium work.

### B. Failure To Identify Transferable Skills

The plaintiff next argues that the administrative law judge erred in failing to determine whether she had transferable work skills for purposes of application of the Grid. *See* Statement of Errors at 10-11. In her statement of errors, she appeared to challenge that transgression with respect to the finding that the plaintiff could perform medium work. *See id*. However, at oral argument, her counsel contended that the administrative law judge erred in failing to determine whether the plaintiff had transferable skills for purposes of application of the Grid to work capacities below medium.

As the commissioner argued in her brief with respect to medium work, and through counsel at oral argument with respect to light and sedentary work, it is immaterial for purposes of application of the Grid whether the plaintiff had transferable skills. *See* Opposition at 14-15. The administrative law judge relied on Grid rules pertaining to medium work that presuppose no transferable job skills, and the same result (not disabled) is reached even in relying on Grid rules that presuppose an entirely unskilled work history. *See* Rules 203.11, 203.19 to Grid. Likewise, there would have been no need to ascertain whether the plaintiff had transferable skills for purposes of application of the relevant Grid rules pertaining to light and sedentary work. If the plaintiff

10

had a light work capacity, she would have been found disabled as of age 55 and not disabled prior to that time regardless of whether she had no transferable skills or an unskilled work history pursuant to the applicable Grid rules. *See* Rules 202.01, 202.02, 202.10, 202.11 to Grid. If she had a sedentary work capacity, she would have been found disabled at all relevant times regardless of whether she had no transferable skills or an unskilled work history. *See* Rules 201.01, 201.02, 201.09, 201.10 to Grid.

The administrative law judge, hence, did not err in failing to determine whether the plaintiff had transferable work skills.

### C. Failure To Give Controlling Weight to Dr. Gardner's Opinions

The plaintiff next contends that Dr. Gardner's RFC opinions should have been given controlling weight in that they were supported by objective medical evidence in the form of Dr. Gardner's physical examinations, bone density testing, and MRI imaging and were not inconsistent with the treatment records of other treating medical providers. *See* Statement of Errors at 11-13.

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.*[3] An administrative law judge may give the opinion little weight or reject it, provided that she supplies "good reasons" for so doing. *See, e.g., id.*

---

[3] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

11

("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

Dr. Gardner's opinions included, in addition to a limitation to less than sedentary work, a restriction to part-time work not to exceed two hours per shift, 10 hours per week, and a prediction that the plaintiff's impairments or treatment would cause her, on average, to be absent from work more than four days per month. *See* Record at 430, 432.

As discussed above, the administrative law judge reasonably deemed these opinions inconsistent with Dr. Gardner's own findings on examination, which revealed no worsening in the plaintiff's condition since prior to her alleged onset date of disability, as well as Buchan's relatively benign findings on examination, the plaintiff's activity levels, and the plaintiff's indication that she left her final job because of a conflict with her supervisor and was able to perform its heavy work demands well.

### D. Asserted Flawed Credibility Finding

The plaintiff next contends that the administrative law judge's credibility finding is unsupported by substantial evidence. *See* Statement of Errors at 13. The commissioner

acknowledges that this court has held that it is improper to draw a negative inference based on a claimant's assertedly poor work record. *See* Opposition at 13; *see also, e.g., Arsenault v. Astrue*, Civil No. 08-269-P-H, 2009 WL 982225, at *7 (D. Me. Apr. 12, 2009) (rec. dec., *aff'd* July 28, 2009). However, she correctly notes that remand is not warranted when, as here, an administrative law judge provides other valid bases for a negative credibility determination. *See, e.g., id.*

The administrative law judge did so in this case. As discussed above, she properly drew negative credibility inferences based on the plaintiff's performance of certain activities such as cutting and stacking wood and motorcycling, which she supportably deemed inconsistent with the plaintiff's allegations of disabling pain and limitations, and the contradiction between the plaintiff's hearing testimony and her statements in two earlier function reports as to why she left her last job. In addition, the plaintiff admitted that she had continually lied about her educational background in an attempt to secure work. *See* Record at 220. She contends that the administrative law judge should not have drawn a negative inference from this admittedly regrettable conduct in that it demonstrated her desire to work and support herself. *See* Statement of Errors at 9. Nonetheless, as counsel for the commissioner rejoined at oral argument, the administrative law judge reached an equally supportable conclusion that the plaintiff's conduct demonstrated her willingness to lie to obtain a desired result, whether a job or disability benefits.

In these circumstances, there is no basis on which to disturb the administrative law judge's credibility determination. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir.1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); *Allen v. Astrue,* No. 2:10–cv–35–DBH, 2010 WL 5452123, at *2 (D. Me. Dec. 28, 2010) (rec. dec., *aff'd* Jan. 18, 2011)

("Even assuming *arguendo* that the administrative law judge erred in certain of the cited respects, her thorough and detailed credibility analysis remains supported by specific findings and, hence, entitled to deference.").

### E.  Failure To Apply Grid Rules

Finally, the plaintiff faults the administrative law judge for failing to apply Grid rules pertaining to individuals with a maximum capacity for either light or sedentary work.  *See* Statement of Errors at 13-14.[4]  As explained previously, the administrative law judge supportably found the plaintiff capable of medium work.  Remand, hence, is unwarranted on this basis.

### II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of June, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] The plaintiff cited Rules 201.02 and 201.10, *see* Statement of Errors at 13-14, both of which pertain to individuals with a maximum capacity for sedentary work, *see* Rules 201.02, 201.10 to Grid.  At oral argument, her counsel clarified that he had intended to cite Rule 202.02, which pertains to persons of advanced age with a maximum capacity for light work, in addition to Rule 201.10.  *See* Rule 202.02 to Grid.